```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL WHITFIELD,
                                Plaintiff,          08-CV-6427

                v.
                                                    DECISION
                                                    and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                Defendant.
_____
```

**INTRODUCTION**

Plaintiff Michael Whitfield ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") James E. Dombeck, which denied his application for benefits, incorrectly evaluated medical evidence and that he was denied a fair and impartial trial at his administrative hearing.

Both the Commissioner and Plaintiff move for judgment on the pleadings pursuant to the Federal Rules of Civil Procedure 12(c) ("Rule 12(c)"). The Commissioner argues that substantial evidence in the record supports the ALJ's finding that Plaintiff's impairments do not render him disabled as defined by the Social Security Act ("the Act"). Plaintiff alleges that the ALJ's argumentative nature at his administrative hearing impeded his

right to a fair and impartial trial and that the ALJ's decision contained several legal errors. Plaintiff requests a remand for further proceedings before a different ALJ to determine whether Plaintiff is disabled under the Act. This Court finds that the decision of the Commissioner, for the reasons set forth below, is supported by substantial evidence and is in accordance with the applicable law. Therefore the Commissioner's motion for judgment on the pleadings is hereby granted and the plaintiff's motion is denied.

## BACKGROUND

On January 24, 2004, Plaintiff filed an application for DIB claiming a disability since January 3, 2003, due to back pain, depression, and uncontrolled hypertension. (Tr.[1] at 70). Plaintiff, who was 31 years old at the time of his application, had completed his GED (General Educational Development) and maintained steady employment from 1989 through January 2003. (Tr. at 85-90). Plaintiff alleges that he became disabled after sustaining a back injury while working as a coal handler for Rochester Gas & Electric (RG&E). (Tr. at 157). The Social Security Administration initially denied Plaintiff's application on March 30, 2005 and Plaintiff filed a timely request for an administrative hearing on May 18, 2005. (Tr. at 32, 40). An administrative hearing was held on August 16, 2007 before ALJ James E. Dombeck, and Plaintiff was represented by counsel. (Tr. at 537-65).

---

[1] Citations to "Tr." refer to the Transcript of the Administrative Proceedings.

In a decision dated October 16, 2007, the ALJ found Plaintiff not disabled within the meaning of the Act. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 11, 2008. (Tr. at 6-9). This action followed.

## DISCUSSION

### I. Jurisdiction and Scope of Review

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. See Mathews v. Eldridge, 424 U.S. 319, 320 (1976). In addition, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., 236 Fed.Appx. 641, 642-3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. See Green-Younger v. Barnhart, 335 F.3d

99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Both the Commissioner and Plaintiff move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c). Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

Since this Court finds that the ALJ's decision which Plaintiff was not disabled within the meaning of the Act was supported by substantial evidence in the record, judgment on the pleadings is hereby granted in favor of the Commissioner.

II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In his decision, the ALJ adhered to the Social Security Administration's five-step evaluation analysis in finding that

Plaintiff was not disabled within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520.[2]

Under step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on January 3, 2003. (Tr. at 19). At step two, the ALJ determined that Plaintiff's severe impairments included chronic low back pain, a depressive disorder, carpal and cubital tunnel syndrome, status post release surgeries, hypertension, and obesity. Id. After a review of all of Plaintiff's medical evidence, the ALJ concluded that these impairments did not meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (Tr. at 19-22).

At step four, the ALJ found that notwithstanding Plaintiff's impairments, he retained a residual functional capacity ("RFC") that allowed him to perform sedentary work. (Tr. at 22). After determining Plaintiff's RFC, the ALJ concluded that Plaintiff could no longer perform his past relevant work as a coal handler and hospital custodian. The ALJ used the Medical-Vocational Guidelines ("the Grids[3]") to establish whether Plaintiff was disabled under

---

[2] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

[3] The Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations or as they are commonly known as "the Grids" are a series of rules that can direct an ALJ to conclude that a claimant is either "disabled" or "not disabled" depending upon the claimant's age, residual functional

the Act. Applying these guidelines, the ALJ concluded that, given Plaintiff's age, education, previous work experience, and RFC, Plaintiff was not disabled. (Tr. at 24).

Plaintiff alleges that the ALJ's decision should be reversed because the ALJ failed to properly assess his medical evidence, the ALJ improperly concluded that Plaintiff's symptoms and complaints were not credible, and Plaintiff was denied a fair and impartial administrative hearing. (See Plaintiff's Brief ("Pl. Br.") at 22, 24, 26).

> A. The ALJ's decision is supported by the medical evidence in the record.

Plaintiff alleges that the ALJ failed to properly assess his medical evidence because he selectively summarized portions of Plaintiff's medical history and did not consider all of the of Plaintiff's physicians. (Pl. Br. at 22-24). Upon reviewing the record, it is clear that the ALJ reached his conclusion after considering and discussing each of eleven physicians that treated Plaintiff. (Tr. at 20-22).

Plaintiff argues that the ALJ's failure to cite to Dr. Rachel Conley's May 2005 and May 2007 reports is indicative of his inaccurate review of Plaintiff's medical evidence. (Pl. Br. at 22). While Dr. Conley's assessment in May 2006 asserted that Plaintiff's back pain would limit his ability to sit and stand to the extent that he would be unable to perform sedentary work, this opinion is inconsistent with her subsequent reports. (Tr. at 22). Less than

---

capacity, and vocational profile. Decker v. Harris, 647 F.2d 291, 296 (2d Cir.1981).

nine months later, Dr. Conley concluded that plaintiff could sit for eight hours in an eight-hour day; frequently lift up to five pounds; occasionally lift ten to twenty pounds; and that Plaintiff's symptoms and complaints were not consistent with his physical exam. (Tr. at 349-50). In May 2007, Dr. Conley also found that Plaintiff could lift no more than 10 pounds; could push/pull no more than 25 pounds; was limited in his ability to bend at the waist; and would need a 5 minute break after one hour of sitting or standing. (Tr. at 356). Dr. Conley's assessments are not inconsistent with the ALJ determination that Plaintiff had the ability to perform sedentary work[4]. Furthermore, a telephone log from Dr. Conley's office reveals that Plaintiff called to request a handicap parking pass and a scooter but both of these requests were denied given his young age. Id.

On January 20, 2003, Plaintiff first saw Dr. Auerbach pursuant to his Worker's Compensation claim involving his back pain that developed while working as a coal handler. (Tr. at 191-217). Dr Auerbach opined that Plaintiff is able to lift ten pounds; push/pull 25 to 30 pounds; limited in ability to reach below the waist; and needs to "vary position for comfort." (Tr. at 194-206, 240). Dr. Auerbach also concluded that Plaintiff's back pain was only mild to moderate and continually encouraged Plaintiff to remain active and work with VESID for retraining so that he could

---

[4] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. See 20 C.F.R. § 404.1567(a) (1980) (45 F.R. 55584, Aug. 20, 1980).

rejoin the workforce. (Tr. at 196, 200). Dr. Auerbach's opinion is consistent with the ALJ's decision that Plaintiff retains that ability to perform sedentary work despite his back pain.

Dr. John Ring performed an independent medical examination of Plaintiff on May 12, 2003. (Tr. at 157). In his medical opinion, Dr. Ring concluded that Plaintiff was not able to return to his previous job but was able to continue working with the restriction of lifting less than 20 pounds and no repetitive bending. (Tr. at 158). This opinion further supports the ALJ's determination that Plaintiff can perform sedentary work.

On June 23, 2003, Plaintiff saw Dr. Rajeev Patel, a spine specialist, who provided an electrodiagnostic consultation. (Tr. at 278-80). All of Plaintiff's test results revealed normal responses in both lower extremities and there was no evidence of acute or chronic lumbosacral radiculopathy, which would corroborate Plaintiff's subjective complaints of back pain if it had been present. (Tr. at 280). Dr. Patel recommended that Plaintiff be evaluated at a pain management center, as he was not a candidate for any surgical intervention. (Tr. at 274). Further, Dr. Patel concluded that Plaintiff could not bend or twist and was restricted from lifting more than 10 pounds but could return to the work force with retraining from VESID. (Tr. at 272, 274).

On October 28, 2003, Plaintiff had an MRI of his lumbar spine as requested by Dr. Auerbach and Dr. Patel. (Tr. at 263). Dr. Anton Beitia concluded that Plaintiff's MRI revealed no evidence of significant subluxation, no significant indication of disc

herniation, and minimal canal narrowing. Again, this objective medical test conflicts with Plaintiff's complaint of extreme back pain.

Dr. Webster Pilcher, a neurosurgeon, saw Plaintiff on December 22, 2003 for an initial consultation. (Tr. at 161). At the appointment, Dr. Pilcher reviewed Plaintiff's imaging results and found no evidence of grossly herniated discs or significantly compressed nerve roots. (Tr. at 162). Dr. Pilcher therefore concluded that Plaintiff was not a candidate for surgery because his imaging failed to reveal any basis for radiculopathic pain. He recommended that Plaintiff continue a conservative course of pain treatment for his musculoskeletal back pain. Id.

The ALJ further relied upon the opinion of Dr. Dotson, a pain management specialist, who performed a physical exam of Plaintiff on September 7, 2006. (Tr. at 372). During this exam, Dr. Dotson noted that he could not elicit pain with any palpation on Plaintiff's low back. Id. He opined that although Plaintiff did have low back pain, however concluded that there was a "degree of symptom amplification" as Plaintiff's complaints did not correlate with his imaging findings. Id.

Plaintiff's carpal and cubital tunnel syndrome, as well as his depressive disorder were also considered by the ALJ. With regard to Plaintiff's carpal and cubital tunnel syndrome, Dr. Carrasquillo performed release surgery on Plaintiff in November 2006, January 2007, and May 2007. (Tr. at 519-20). Plaintiff stated that the surgeries provided pain relief and he had significant improvement.

Id. Dr. Carrasquillo opined that Plaintiff's carpal or cubtial tunnel syndrome were not disabling. This opinion is reflected in the ALJ's decision.

In considering Plaintiff's depressive disorder, the ALJ reviewed all of his mental health evaluations as reflected in his decision. Dr. Michael Kuttner, a clinical psychologist, evaluated Plaintiff on September 2, 2003 and found that he was mildly depressed. (Tr. at 159-60). However, Dr. Kuttner also concluded that Plaintiff's judgment and insight were adequate and diagnosed Plaintiff with a pain disorder that has medical and psychological components. (Tr. at 160).

Plaintiff was also referred for treatment to Dr. Jean Talbot, who diagnosed Plaintiff with having a depressive disorder that was precipitated by chronic pain, employment disruption and financial concerns. (Tr. at 340, 433). Dr. Talbot's treatment plan for Plaintiff consisted of weekly therapy sessions and medication (Lexapro). (Tr. at 433-92). Like Dr. Kuttner, Dr. Talbot opined that Plaintiff's depression was a derivative condition from his back pain, which was likely to improve within twelve months. (Tr. at 433-45). Furthermore, Dr. Talbot expressed that Plaintiff's functional ability was mildly to moderately limited but the limitation did not stem from Plaintiff's psychiatric symptoms. (Tr. at 344-45). Accordingly, the ALJ's evaluation of Plaintiff's depressive disorder is supported by the medical opinions expressed within the record.

The ALJ concluded that Plaintiff did suffer from back pain, depressive disorder, and carpal and cubital tunnel syndrome but that these impairments did not prevent him from performing sedentary work and therefore he was not disabled. Upon reviewing the record, this Court finds that the ALJ's evaluation of the medical evidence and conclusion that Plaintiff is not disabled is supported by substantial evidence in the record, including the medical evidence provided by Dr. Conley, Dr. Auerbach, Dr. Talbot, as well as the consultative physicians.

    B.   <u>The ALJ's credibility assessment was proper.</u>

After considering the objective medical evidence and Plaintiff's testimony regarding his daily activities, the ALJ concluded that Plaintiff's complaints of extreme back pain were not credible. (Tr. at 23). Plaintiff argues his work history and continual complaints of extreme pain which prevents him keeping medical appointments, renders him unable to sleep, and precludes him from enjoying his life. All of this should have compelled the ALJ to conclude that he was credible. (<u>See</u> Pl. Br. at 24).

It has been held that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability," however this factor alone is not dispositive of Plaintiff's credibility. <u>Rivera v. Schweiker</u>, 717 F.2d 719, 725 (2d Cir.1983) (citation omitted). In order to determine Plaintiff's credibility, it is proper for the ALJ to consider all factors relevant to Plaintiff's symptoms and base his

determination on the totality of the evidence in the record. Mimms v. Heckler, 750 F.2d 180, 185-186 (2d Cir.1984).

This Court concludes that the ALJ's evaluation of Plaintiff's credibility was proper as he considered all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ determined that Plaintiff's impairments could reasonably be expected to produce the symptoms that Plaintiff alleged. Second, the ALJ is required to evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the Plaintiff's ability to do work activities. See 20 C.F.R. § 404.1529(c), see also SSR 96-7p. In making this assessment, the ALJ must determine Plaintiff's credibility by evaluating the following factors:

    (1) The individual's daily activities;

    (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

(4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or symptoms;

(5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7P. The record reveals that the ALJ considered Plaintiff's daily activities and found them to be inconsistent with his allegation of severe pain and other statements in the record. (Tr. at 23). At Plaintiff's administrative hearing, he testified that he could not perform any household chores. (Tr. at 557). However, Plaintiff's assertion that he cannot perform daily tasks directly contradicts his statements during his 2005 consultative examinations, where he claimed that he shopped, cooked, did laundry, and cleaned. (Tr. at 558). Further, Plaintiff's doctors often refute Plaintiff's claim of disabling back pain as unsubstantiated by objective medical tests. His doctors consistently asserted that Plaintiff's pain is "mild to moderate," he was encouraged to return work, and that he should remain as active as possible. (Tr. at 194, 198, 200, 202). Plaintiff was consistently treated with a conservative pain management plan, including anti-inflammatory medications, heat, stretching, and physical therapy. (Tr. 191, 196, 200, 202, 240). Finally, Plaintiff's objective medical imaging does not correlate with Plaintiff's complaints. (Tr. at 372).

Accordingly, the ALJ's conclusion that Plaintiff's subjective complaints and symptoms were not credible to the extent claimed by the Plaintiff is supported by substantial evidence in the record.

C. <u>Plaintiff's allegation that he did not receive a fair and impartial hearing.</u>

Plaintiff alleges that he did not receive a fair and impartial trial due to comments made by the ALJ at his administrative hearing See Pl. Br. at 26. This Court need not reach this claim as it has already been determined that the ALJ's decision is supported by substantial evidence in the record. Further, this decision is consistently supported by both the objective medical evidence and physician' opinions throughout the record. In sum, there is no evidence that the ALJ was biased in his consideration of Plaintiff's medical evidence and this claim will therefore not be considered.

<u>CONCLUSION</u>

For the reasons set forth above, this Court finds that Commissioner's decision to deny Plaintiff benefits was supported by substantial evidence in the record. I therefore grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied and the Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                            s/Michael A. Telesca
                                               MICHAEL A. TELESCA
                                      United States District Judge

DATED:    Rochester, New York
           July 23, 2010